ELLSWORTH F. LAMPORT AND VERLA M. LAMPORT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lamport v. Commissioner
Docket No. 14871-80.
United States Tax Court
T.C. Memo 1983-629; 1983 Tax Ct. Memo LEXIS 155; 47 T.C.M. (CCH) 19; T.C.M. (RIA) 83629; October 12, 1983. Ellsworth F. Lamport, pro se. Sara W. Delton, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Respondent determined a deficiency of $9,050.44 in petitioners' Federal income tax for the taxable year 1976 and an addition to tax under section 6653(a) [1] in the amount of $452.52. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following issues: (1) whether the petitioners received unreported income in the amount determined by respondent during the taxable year 1976; and (2) whether any part of the underpayment of tax for the taxable year 1976 was due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are *157 found accordingly. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The petitioners were residents of Schertz, Texas, when they filed their petition in this case. The petitioners filed a joint Federal income tax return for 1976 and reported their income and deductions on the basis of the cash receipts and disbursements methods of accounting. On February 2, 1978, respondent [2] mailed to the petitioners a letter notifying them that their 1976 Federal income tax return was being examined. The petitioners came to respondent's offices in April 1978 for an examination of their return. The petitioners had not brought all the necessary records with them to verify the amount of their income and certain deductions that were claimed on their 1976 return. During the examination, respondent prepared a report of examination changes that disallowed certain deductions and increased income, resulting in a proposed deficiency. Respondent gave the petitioners additional time to compile the necessary records to substantiate the disputed deductions and to dispute the additional amount of income. In April 1979 the petitioners' *158 representative provided respondent with some of the requested information. However, the records supplied by the petitioners or their representative were still incomplete. Therefore, on November 28, 1979, respondent sent letters to the Broadway National Bank (hereinafter Bank) and the Randolph Brooks Federal Credit Union (hereinafter Credit Union), requesting that these organizations furnish respondent with petitioners' bank records. [3] The Credit Union voluntarily complied with respondent's request and in January 1980 sent to respondent copies of statements and source documents relating to the petitioners' accounts with the Credit Union. However, the Bank requested that respondent issue a summons before it would furnish the requested information. On January 11, 1980, respondent served a summons on the Bank and mailed a copy of the summons to the petitioners, who received the copy on January 18, 1980. Petitioner Ellsworth Lamport sent a letter to the Bank requesting that the Bank not honor the summons and also notified respondent by mail of his objections to the summons. Respondent received that letter on January 21, 1980. *159 After being notified of Mr. Lamport's objections to the summons, the Bank informed respondent on January 22, 1980, that it would comply with the summons and that the summoned documents would be available by January 25, 1980. On January 25, 1980, respondent picked up some of the summoned documents from the Bank and requested that the Bank furnish additional information, which was received by respondent on February 5, 1980. Using the information received from the Bank and the Credit Union, as well as information received from other parties pursuant to additional informal information requests, respondent prepared a revised report of examination changes, which was mailed to the petitioners on March 12, 1980. On April 14, 1980, respondent sent petitioners the notice of deficiency. During 1976, the petitioners made the following deposits to their account at the Bank: Date
Amount
03-01-76
$1,431
03-04-76
2,919
03-05-76
1,635
03-06-76
4,900
03-11-76
14,505
The amounts listed above consisted of the proceeds of the sales of mutual fund shares sold by the petitioners during 1976. The gains from these sales are entitled to long-term capital gain treatment as *160 follows: Amount
Adjusted
Sec. 1202
Fund
Received
Basis
Gain
Deduction
One William Street
$1,431.00
$1,140.00
$ 291.00
$ 145.50
Investment Fund,
Inc.
2,919.00
2,283.00
636.00
318.00
T. Rowe Price
1,635.00
1,209.00
426.00
213.00
American Investors
4,900.00
3,713.20
1,186.80
593.40
Afuture Fund, Inc.
14,505.00
8,229.00
6,276.00
3,138.00
$8,815.80
$4,407.90
On their 1976 Federal income tax return, the petitioners did not include in income any amount of gain from the sales of capital assets. The petitioners deducted $438.88 as a capital loss carryover from 1974. During 1976, the petitioners received $395.02 in interest income on their account with the Bank and $176.75 in interest on a time certificate of deposit. In 1976 the petitioners also received $338 in interest income from the Credit Union. On their 1976 Federal income tax return, the petitioners reported a total of $313.28 of interest income. OPINION Issue 1. Unreported Income
The petitioners contend that the notice of deficiency is null and void. The primary reason for their contention [4] is their claim that the notice was prepared using information *161 obtained from third party recordkeepers in a manner that violated section 7609. [5] They therefore conclude that they are not liable for any additional Federal income tax or addition to tax. *162 Respondent contends that the petitioners are taxable on unreported gain in the total amount of $8,815.80 and on unreported interest income in the amount of $596.49 [6] and are liable for the negligence addition to tax. Citing Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974), respondent contends that this Court should not look behind the notice of deficiency and examine the alleged violations of section 7609.
Generally, a notice of deficiency carries with it a presumption of correctness. Thus, the burden of proof rests with the petitioner to prove that respondent's determinations are erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
This Court does not usually look behind the notice of deficiency and examine the record developed at the administrative level because a trial before this Court is a proceeding de novo. Riland v. Commissioner,79 T.C. 185, 201 (1982); *163 Greenberg's Express, Inc. v. Commissioner,62 T.C. at 327-28. In Greenberg's Express, Inc.,supra at 328, we stated as follows: This Court has on occasion recognized an exception to the rule of not looking behind the deficiency notice when there is substantial evidence of unconstitutional conduct on respondent's part and the integrity of our judicial process would be impugned if we were to let respondent benefit from such conduct [citing Suarez v. Commissioner,58 T.C. 792 (1972)]. But even in such limited situations, we have refused to declare the deficiency notice null and void, as petitioners would have us do.[Citations omitted.] Therefore, assuming arguendo that petitioners' allegations are sufficient grounds for us to look behind the statutory notice, we find no support for declaring the notice of deficiency null and void, as petitioners request. Cf. Llorente v. Commissioner,649 F.2d 152 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980). Rather, if we were to look behind the notice of deficiency in this case and agree with petitioners' allegations, the proper remedy *164 would be to shift the burden of going forward with the evidence to respondent. In this case respondent has presented sufficient evidence of unreported income to satisfy that burden, were it shifted to him. [7] Respondent subpoenaed witnesses from the Bank and from the Credit Union, who presented evidence at trial of the petitioners' interest income earned in 1976 and deposits made to the petitioners' account with the Bank. The petitioners also contend that the evidence presented by respondent at trial must be excluded by application of the exclusionary rule. It is true, as petitioners point out, that this Court has applied the exclusionary rule to suppress a determined illegal use of grand jury material in a civil tax trial. However, even assuming without deciding that the exclusionary rule were applicable here, the rule would not suppress the evidence presented at trial in this case because the evidence presented by respondent was acquired separately and independently from the prior alleged illegal *165 conduct. Respondent was aware of the existence of petitioners' accounts at the Bank and the Credit Union at time the examination was begun, before any information was requested from the Credit Union or the Bank. The evidence provided by respondent during the trial was independent evidence of unreported income. The petitioners also contend that the evidence of unreported income presented by respondent at trial must be suppressed because respondent failed to comply with the procedures for obtaining information pursuant to a judicial subpoena prescribed by 12 U.S.C. sec. 3407 (Supp. V 1981)[8] when respondent subpoenaed the witnesses from the Bank and the Credit Union. The subpoenas commanding respondent's witnesses to give testimony at the trial in this case were issued pursuant to Rule 147, Tax Court Rules of Practice and Procedure. The subpoenas served on respondent's witnesses in this case are not governed by the rules of 12 U.S.C. sec. 3407 because 12 U.S.C. sec. 3413(e) (Supp. V 1981)[9] exempts from the requirements of 12 U.S.C. sec. 3407 judicial subpoenas for records sought by the *166 Government under the rules of this Court. *167 The petitioners do not contest the amounts that were deposited in their bank account, nor do they contest that such amounts represent proceeds from the sales of capital assets. In addition, the petitioners do not contest the fact that they received unreported interest income. On brief, the petitioners contend that they incurred capital losses during 1976. They also contend on brief that they incurred substantial interest expenses, which would offset the unreported interest income. However, they have offered no evidence to support these contentions. Consequently, we hold for respondent on this issue, with the result that petitioners must include in income $8,815.80, taxable as long-term capital gain (exclusive of the section 1202 deduction), and $596.49 of interest income. Issue 2. Addition to Tax
The second issue is whether the petitioners are liable for an addition to tax under section 6653(a). The petitioners bear the burden of proving that the underpayment of taxes was not due to negligence or intentional disregard of rules and regulations. Rule 142(a), Tax Court Rules of Practice and Procedure; Foster v. Commissioner,80 T.C. 34, 237 (1983). *168 Despite petitioners' objections regarding events occurring prior to the issuance of the notice of deficiency, the fact, as we have found above, is that they received in 1976 a substantial amount of unreported income. They have offered no evidence to explain the omission of such income. Their statements as to offsetting capital losses and interest expenses are unsupported by any evidence in the record.
Therefore, we hold that the petitioners are liable for the negligence addition under section 6653(a). To give effect to the concessions of the parties and our disposition of the disputed issues, Decision will be entered under Rule 155.
[10]
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. The actions taken by respondent's agents during the examination of the return will be referred to as actions of respondent. ↩
3. Respondent also requested bank records from the National Bank of Ft. Sam Houston by letter sent November 28, 1979, and by a summons served on January 11, 1980. This bank never supplied the requested documents to respondent. Because the notice of deficiency was not prepared by respondent in reliance upon any information supplied by this bank, we not discuss further respondent's actions taken with respect to this bank.↩
4. The petitioners also contend that respondent's actions in obtaining information from third party recordkeepers violated many of their constitutional rights, as well as other statutory requirements. Due to our disposition of the unreported income issue, we do not need to address those contentions, and hereinafter will only refer to the alleged section 7609 violation. ↩
5. Applicable to any summons issued after February 28, 1977 (prior to amendment by sec. 331, Tax Equity and Fiscal Responsibility Act of 1982, 96 Stat. 620), section 7609 provided as follows: (a) NOTICE.-- (1) IN GENERAL.--If-- (A) any summons described in subsection (c) is served on any person who is a third-party recordkeeper, and (b) the summons requires the production of any portion of records made or keep of the business transations or affairs of any person (other than the person summoned) who is identified in the description of the records contained in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 14th day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain directions for staying compliance with the summons under subsection (b)(2). (2) SUFFICIENCY OF NOTICE.--Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.
* * * (b) RIGHT TO INTERVENE; RIGHT TO STAY COMPLIANCE.-- (1) INTERVENTION.--Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604. (2) RIGHT TO STAY COMPLIANCE.--Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to stay compliance with the summons if, not later than the 14th day after the day such notice is given in the manner provided in subsection (a)(2)-- (A) notice in writing is given to the person summoned not to comply with the summons, and (B) a copy of such notice not to comply with the summons is mailed by registered or certified mail to such person and to such office as the Secretary may direct in the notice referred to in subsection (a)(1). * * * (d) RESTRICTION ON EXAMINATION OF RECORDS.--No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made-- (1) before the expiration of the 14-day period allowed for the notice not to comply under subsection (b)(2), or (2) when the requirements of subsection (b)(2) have been met, except in accordance with an order issued by a court of competent jurisdiction authorizing examination of such records or with the consent of the person staying compliance.↩
6. Determined as follows: ↩
Interest
Bank account
$395.02
CD
176.75
Credit Union account
338.00
$909.77
Less: reported interest
313.28
Unreported interest
$596.49
7. We therefore need not determine whether the notice of deficiency is presumptively correct, as we are deciding the issues on the merits, without resort to who has the burden.↩
8. 12 U.S.C. sec. 3407 provides, in part, the following: Sec. 3407. JUDICIAL SUBPENA A Government authority may obtain financial records under section 3402(4) of this title pursuant to judicial subpena only if-- (1) such subpena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; (2) a copy of the subpena has been served upon the customer or mailed to his last known address on or before the date on which the subpena was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry; * * * [We note that the word subpena used herein is normally spelled subpoena but subpena is traditionally preferred by Congress.] ↩
9. 12 U.S.C. sec. 3413(e) provides as follows: (e) DISCLOSURE PURSUANT TO FEDERAL RULES OF CRIMINAL PROCEDURE OR COMPARABLE RULES OF OTHER COURTS Nothing in this chapter shall apply when financial records are sought by a Government authority under the Federal Rules of Civil or Criminal Procedure or comparable rules of other courts in connection with litigation to which the Government authority and the customer are parties.↩
10. On December 2, 1982, the petitioners filed a "Motion to Determine Notice of Deficiency Invalid." This motion in essence reiterates petitioners' arguments presented on brief, which we have addressed above and rejected. Accordingly, this motion will be denied.↩